IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRINE C. HYDE                              *

     Plaintiff,                        *

                                               Civil Action No.: RDB 05-317

v.                                        *

RDA, INC., et. al.,                        *

     Defendants.                       *

*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

This action arises out of a complaint that Plaintiff Trine C. Hyde ("Hyde"), a Maryland resident, filed against Defendant RDA, Inc. t/a Easterns Automotive Group ("Easterns"), a Virginia company.   Hyde alleges that Easterns violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., by obtaining an unauthorized copy of Hyde's credit report.  Easterns denies this allegation and also argues that Hyde is contractually obligated to submit her claims to arbitration.  This Court has jurisdiction based on the existence of a federal question.  *See* 28 U.S.C. § 1331.  The issues have been briefed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  As discussed below, Easterns' Motion to Enforce Arbitration, Dismiss, or in the Alternative to Stay is DENIED.

## BACKGROUND

In 2004, Easterns mailed Hyde a one-page promotional flyer (the "Easterns Flyer") with information printed on the front and back.  On the front, Easterns told Hyde that "you have been selected by Easterns Automotive Group to receive . . . pre-approved financing of up to $25,000." (Compl.¶ 3, Ex. A.)  On the back, Easterns explained:

> Your new vehicle payment cannot exceed 20% of your gross monthly
> Income; vehicle payment totaled with your current monthly payments

> must not exceed 50% of your gross income.  Must be at least 18 years of age.  If you accept this offer, we may not extend credit to you if, after you respond, we determine that you do not continue to meet the criteria used for this pre-approved offer.  Lender assumes no responsibility for incorrect information supplied by various credit reporting agencies.  Any equity deficit in your current vehicle must be paid or refinanced with new vehicle.  Credit severity may affect down payment.  Bankruptcies must be discharged.  If in compliance with provisions listed above, you are guaranteed to receive a loan for minimum of $300 up to $22,500 toward the purchase of a 1999 or newer vehicle from Enterprise America Finance.

(Compl.¶ 3, Ex. A.)  The Easterns Flyer noted that "[w]e used information in a pre-qualifying report from a credit agency in connection with this firm offer of credit."  (Compl. Ex. A.)  Easterns obtained this pre-qualifying report without Hyde's authorization.  (Compl. ¶ 10.)

On November 20, 2004, after receiving the flyer, Hyde agreed to purchase a 2002 Mercury Sable from Easterns.  This agreement was memorialized in two contracts between Hyde and Easterns: the Maryland Buyers Order and the Simple Interest Motor Vehicle Contract and Security Agreement.  (*See* Easterns' Memorandum in support of its Motion to Enforce Arbitration, Dismiss, or in the Alternative Stay ("Easterns Memorandum"), Exs. A & B.)

The Maryland Buyers Order contains the following agreement to arbitrate disputes:

> The parties agree that all disputes, claims, or controversies arising from or relating to the Purchaser's *purchase of the Vehicle*, the Agreement or the relationship which result [sic] from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration . . .

(Easterns Memorandum, Ex. A. (emphasis added))  The Simple Interest Motor Vehicle Contract and Security Agreement does not contain an arbitration clause.  (*Id*. at Ex. B.)  According to Easterns, Hyde never purchased the 2002 Mercury Sable because she "did not qualify for the full amount of financing she sought and was unable to consummate the sale."  (*Id*. at 3, n.1.)

<u>DISCUSSION</u>

I.    **Arbitration**

Easterns asks this Court to enforce the arbitration provision in the Maryland Buyers

Order.  In response, Hyde denies that her claims alleging a violation of the FCRA fall within the

scope of that provision.  As discussed below, this Court will not require Hyde to submit claims

relating to the unauthorized possession of her credit report to arbitration.

A.    **Legal Principles**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*. requires that:

> A written provision in any maritime transaction or a contract
> evidencing a transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract or transaction, or
> the refusal to perform the whole or any part thereof, or an agreement
> in writing to submit to arbitration an existing controversy arising out
> of such a contract, transaction, or refusal, shall be valid, irrevocable,
> and enforceable, save upon such grounds as exist at law or in equity
> for the revocation of any contract.

*Id.* at § 2.  The FAA also requires that a federal court stay any proceedings that present a

controversy which the parties have agreed to arbitrate.  *Id*. at § 3.

The Supreme Court has established a presumption concerning the scope of arbitrable

issues under the FAA:

> Where the contract contains an arbitration clause, there is a
> presumption of arbitrability in the sense that "an order to arbitrate the
> particular grievance should not be denied unless it may be said with
> positive assurance that the arbitration clause is not susceptible of an
> interpretation that covers the asserted dispute. Doubts should be
> resolved in favor of coverage."

*AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986) (quoting *United

Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Despite this presumption, agreements to arbitrate are fundamentally about private choice.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582. Accordingly, the determination of what disputes are arbitrable is focused on the intent of the parties. *See AT & T Techs., Inc.*, 475 U.S. at 648-49 ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.").

> B.     **Application**

The critical inquiry here is whether the arbitration provision in the Maryland Buyers Order applies to pre-existing disputes, *i.e.*, disputes arising before the agreement was executed. The arbitration provision at issue states:

> that all disputes, claims, or controversies arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement or the relationship which result [sic] from the Agreement, or the validity of this arbitration clause or the Agreement shall be resolved by binding arbitration . . .

(Easterns Memorandum, Ex. A.)  None of the "disputes, claims, or controversies" described by this clause encompass pre-existing disputes.  For example, disputes arising from or relating to "the Purchaser's purchase of the Vehicle" or "the relationship which result [sic] from the Agreement" concern *future* activities, not disputes arising out of past events.  Similarly, disputes arising from or relating to "the validity of this arbitration clause" or "the validity of . . . the Agreement" go to the *validity* of the arbitration clause, not what that clause covers.

The remaining type of dispute—those arising from or relating to "the Agreement"—merits further analysis.  Easterns argues that this particular language extends to Hyde's FCRA claim.  Easterns' argument is threefold:  First, this particular arbitration clause is "broad."  Second, a "significant relationship" exists between Hyde's FCRA claim and the

Maryland Buyers Order.  Third, this arbitration clause covers Hyde's FCRA claim as a matter of law.  *See*, *e.g.*, *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (explaining that a "broad" arbitration clause "embraces every dispute between the parties having a *significant relationship* to the contract regardless of the label attached to the dispute.") (emphasis added); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (labeling as "broad" a clause requiring that "[a]ny dispute, controversy, or claim arising out of or related to this Consulting Agreement shall be resolved by binding arbitration").

To assess the significance of the relationship between Hyde's FCRA claim and the Maryland Buyers Order, this Court "must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan & Sons*, 863 F.2d at 319.  Bearing in mind the strong federal policy in favor of arbitration, and the broad nature of Easterns' arbitration clause, this Court considers Hyde's claims against Easterns.

Hyde's complaint alleges two counts.  In count one, Hyde contends that Easterns obtained Hyde's credit report without authorization or a "permissible purpose" in violation of the FCRA.  (*See* Compl. ¶¶ 12-16.)  In count two, Hyde asserts exactly the same claim on behalf of a class.  (*See* Compl. ¶¶ 17-23.)  Because these claims are "based on the same legal and factual issues," this Court need examine only Hyde's FCRA claim in count one to determine whether her claims bear a significant relationship to the Maryland Buyers Order.  (*See* Compl. ¶ 20.)

The factual allegations underlying Hyde's FCRA claim attempt to establish that the

Easterns Flyer does not contain a "firm offer of credit" under 15 U.S.C. § 1681b(c)(1)(B)(i).[1]  As

the United States Court of Appeals for the Seventh Circuit explained:

> The term "firm offer of credit" is defined in the FCRA as "any offer
> of credit or insurance to a consumer that will be honored if the
> consumer is determined, based on information in a consumer report
> on the consumer, to meet the specific criteria used to select the
> consumer for the offer." 15 U.S.C. § 1681a(l).

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726 (7th Cir. 2004).  Based on this standard, the facts

needed to determine whether the Easterns Flyer contains a "firm offer of credit" are relatively

easy to identify.  They include the type of credit offered, the terms and conditions of that credit,

whether the offer was made with the expectation that Hyde would accept, the extent to which

Easterns would and did honor its offer, and whether any portion of the offer of credit was

guaranteed.  *See Cole v. U.S. Capital*, 389 F.3d at 726-28 (analyzing whether flier contains a

"firm offer of credit").

Hyde also maintains that, even if the Easterns Flyer contains a firm offer of credit, it fails

to make required disclosures in a "clear and conspicuous" manner under 15 U.S.C. § 1681m(d).

Although the FCRA does not define "clear and conspicuous," the facts needed to evaluate the

disclosures made in the Easterns Flyer are also relatively easy to identify.  They include how

many times that Hyde was made aware of those disclosures, whether the disclosures were made

on the front or the back of the flyer, whether the language of the disclosures was emphasized in

some way, and whether the disclosures were set off from the rest of the document.  *See Cole v.*

*U.S. Capital*, 389 F.3d at 729-732 (analyzing whether flier made required disclosure in a "clear

---

[1]       Pursuant to the FCRA, a consumer's credit report may only be obtained with the
written consent of the consumer or for certain "permissible purposes."  15 U.S.C. § 1681b(f).
One of the listed "permissible purposes" is a "firm offer of credit" to the consumer. 15 U.S.C. §
1681b(c)(1)(B)(i).

and conspicuous" manner); *see also Sampson v. Western Sierra Acceptance Corp.*, 2003 U.S.

Dist. LEXIS 13429, 2003 WL 21785612, *3 (N.D. Ill. Aug. 1, 2003) (commenting on lack of

caselaw interpreting "clear and conspicuous" as that term is used in the FCRA).

After carefully considering the factual allegations underlying Hyde's FCRA claim, this

Court finds that those allegations do not bear a "significant relationship" to the Maryland Buyers

Order.  The reason is that those allegations have very little, if anything, to do with Hyde's

agreement to purchase a car from Easterns.  Hyde's FCRA claim does not arise out of the

performance of the Maryland Buyers Order or the related Simple Interest Motor Vehicle

Contract and Security Agreement.  Neither Hyde nor Easterns rely on the existence or terms of

those agreements to prove or disprove any aspect of Hyde's FCRA claim.  The conduct of which

Hyde complains is simply not connected to these agreements.  The two transactions appear to be

separate and independent.  As a result, the broad arbitration clause contained in the Maryland

Buyers Order does not encompass Hyde's FCRA claim.[2]

For the above reasons, this Court finds that no significant relationship exists between

Hyde's Fair Credit Reporting Act ("FCRA") claim and the Maryland Buyers Order.

Accordingly, this Court will not compel Hyde to submit her claims to arbitration.

II      **Motion to Dismiss**

Easterns argues that, even if arbitration is not required, Hyde's complaint should be

dismissed under Federal Rule of Civil Procedure 12(b)(6).  Easterns contends that, as a matter of

---

[2]      The lack of any meaningful connection between Hyde's FCRA claim and her agreement to buy a car from Easterns distinguishes the cases that Easterns cites in favor of arbitration.  *See J.J. Ryan & Sons*, 863 F.2d 315, 319-20 (4th Cir. 1988) (approving arbitration where dispute "arose out of the performance of" and "involved factual issues arising in connection with" the contracts containing the arbitration clause); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (approving arbitration where plaintiff relied on contract containing arbitration clause to prove its claims).

law, its flyer represents a firm offer of credit and complies with the clear and conspicuous disclosure requirements of the FCRA.  In response, Hyde argues that the offer of credit contained in the Easterns Flyer is a sham and that, even if it is a firm offer, its disclosures are not conspicuous.  For reasons discussed below, this Court finds that Hyde's complaint states a claim upon which relief can be granted under Rule 12(b)(6).

A.      **Legal Principles**

As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001)  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court must

disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).

> B.    **Application**

> 1.    **"Firm Offer of Credit"**

The precise meaning of "firm offer of credit" is vigorously disputed by the parties. Hyde relies on *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004) to argue that whatever "firm offer of credit" means, it requires an offer of sufficient value to justify the absence of the statutory protection of privacy. *Id*. at 726-27. Hyde also argues that the meaning of this phrase is determined in part by Maryland state law, which, for example, requires of an offer that it "plac[e] in the hands of the recipient the apparent power to conclude a contract without further action by the offeror." *Foster & Kleiser v. Baltimore County*, 470 A.2d 1322, 1325 (Md. Ct. Spec. App. 1984). Based on these arguments, Hyde concludes that the Easterns Flyer is not a "firm offer of credit" because it lacks sufficient value and, by failing to provide material credit terms, denies the offeree the power of acceptance.

Easterns contends that "firm offer of credit" has no meaning beyond the definition provided by the FCRA, and respectfully suggests that *Cole v. U.S. Capital* is in direct conflict with the plain and unambiguous language of that statute. Easterns rejects the notion that a "firm offer of credit" must have significant value, arguing instead that no minimum amount of financing is required under the FCRA. Easterns also attacks Hyde's reliance on Maryland law by citing *Cole v. U.S. Capital* for the proposition that if the meaning of this phrase "varies from state to state based on each state's definition of 'offer,' Congress' intent that the FCRA have a uniform meaning and application among the states would be thwarted." *Cole v. U.S Capital*, 389 F.3d at 726 n.6. Accordingly, Easterns concludes that its flyer constitutes a "firm offer of credit"

because it satisfies the terms of the FCRA and guarantees a minimum of $300 in credit.

Although the United States Court of Appeals for the Fourth Circuit has neither interpreted nor applied the phrase "firm offer of credit," it has identified principles for interpreting the FCRA:

> In interpreting a statute, we must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

*Johnson v. MBNA America Bank*, 357 F.3d 426, 429 (4th Cir. 2004) (interpreting "investigation" as that word is used in the FCRA). Applying the above standard, this Court reaches the same result as the Seventh Circuit in *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), the only federal court of appeals case to consider the meaning of "firm offer of credit" in the context of the FCRA.[3]

After carefully considering the relevant statutory language (15 U.S.C. §§ 1681b(c)(1)(B)(i) and 1681a(l)), the specific context of the phrase "firm offer of credit (§ 1681b), and the broader context of the FCRA as a whole (§ 1681), this Court finds that the interpretation of "firm offer of credit" urged by Easterns would render portions of the FCRA inconsistent and contravene the FCRA's explicit statutory purpose of protecting consumer data

---

[3]     In *Kennedy v. Chase Manhattan Bank United States, NA*, 369 F.3d 833 (5th Cir. 2004), the United States Court of Appeals for the Fifth Circuit considered the meaning of "firm offer of credit" in a different legal and factual context. The focus of the Fifth Circuit's inquiry was whether the FCRA permits a creditor to make a "conditional" firm offer of credit, "that is, an offer that is conditioned on the consumer meeting the creditor's previously-established criteria for extending credit." *Id.* at 841. The court answered in the affirmative, finding that a firm offer of credit under the FCRA "really means a 'firm offer if you meet certain criteria.'" *Id.*

and privacy.  If the phrase "firm offer of credit" does not require providing an offer with value, then for practical purposes there is no limit on a credit agency's ability to furnish credit reports without prior authorization.  This would clearly upset the statutory scheme of the FCRA, which "makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole v. U.S.*, 389 F.3d at 726.  Accordingly, "[t]o determine whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 727 (emphasis in original).  Such an inquiry requires analyzing the factual context surrounding the underlying transaction to determine whether the "offer" contains a legitimate extension of credit.  This inquiry must await discovery by the parties in this case.

Based on the legal principles discussed above, this Court finds that Hyde's complaint supports her claim that the Easterns Flyer does not contain a "firm offer of credit."  First, the flyer itself raises serious questions regarding whether Easterns' offer of credit would have or could have been honored if Hyde met the pre-selected criteria that Easterns' offer was conditioned upon.  Although the offer states that "you are guaranteed to receive a loan for minimum of $300  . . . toward the purchase of a 1999 or newer vehicle," Easterns does not appear to dispute Hyde's contention that Easterns does not sell any vehicles for a price approaching $300.  (*See* Compl.¶ 3, Ex. A.)  Given that Easterns' offer requires that the proceeds of any loan must be applied toward the purchase of a vehicle, it is difficult to see how an offer at the low end could be of any value if there are no vehicles for sale in that price-range.  Second, the Easterns Flyer lacks critical information about the credit product allegedly offered by Easterns.  For example, the Easterns Flyer does not specify an interest rate or range of interest rates, makes no mention of the repayment period, and fails to describe the method by which

interest will be compounded.  Such information is relevant to determining whether the offer contained in the Easterns Flyer has value.  For these reasons, at this early stage in the proceedings, this Court cannot conclude as a matter of law that the Easterns Flyer contained a "firm offer of credit."[4]

### 2.   **"Clear and Conspicuous" Disclosure**

Hyde also contends that, even if the Easterns Flyer contains a firm offer of credit, it violates the FCRA for failing to make required disclosures in a clear and conspicuous manner. The FCRA does not define "clear and conspicuous."  It does, however, require that any person using credit information to make a firm offer of credit "provide with each written solicitation made to the consumer regarding the transaction a *clear and conspicuous* statement" disclosing statutorily required information. 15 U.S.C. § 1681m(d) (emphasis added).  The notice must inform the consumer that: (1) the recipient's consumer credit report was used in determining who received the offer; (2) the consumer was selected because she satisfied certain criteria; (3) the offer may not be extended if the consumer does not continue to meet the pre-selected criteria or provide the required collateral; (4) the consumer has the right to opt out of future offers; and (5) the consumer may exercise that right by calling a specified toll-free number or by contacting the credit agency at a given address.  *See id.*

Only two United States Courts of Appeals have considered the meaning of "clear and

---

[4]       *See generally Cole v. U.S. Capital*, 389 F.3d at 724-29 (finding that flyer from car dealer might not contain "firm offer of credit" for similar reasons); *see also Murray v. Flexpoint Funding Corp.*, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500, *2 (N.D. Ill. Jun. 17, 2005) (same with respect to flyer from mortgage broker); *Murray v. Sunrise Chevrolet, Inc.*, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245, *2-3 (N.D. Ill. Sept. 15, 2005) (same with respect to flyer from car dealer).

conspicuous" in the context of the FCRA, and both have drawn on cases involving the Uniform

Commercial Code ("UCC") and the Truth In Lending Act ("TILA").  *See Cole v. U.S. Capital*,

389 F.3d at 729-32; *Stevenson v. TRW Inc.*, 987 F.2d 288, 295-96 (5th Cir. 1993).

> The [cases from the UCC and TILA] make it clear that there is not one aspect of a notice that necessarily will render it "clear and conspicuous" for purposes of the FCRA.  We must consider the location of the notice within the document, the type size used within the notice as well as the type size in comparison to the rest of the document.  We also must consider whether the notice is set off in any other way—spacing, font style, all capitals, etc.  In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it.

*Cole v. U.S. Capital*, 389 F.2d at 731.  For purposes of resolving the present dispute, this Court

adopts the above standard in interpreting "clear and conspicuous" under § 1681m(d).

In this case, the required disclosures are made on the back of the Easterns Flyer.  Those

disclosures are separated from the language that appears to constitute the "offer," which is on the

flyer's front page.  The disclosures also appear to be made using a font that is smaller than any

font used on the flyer's front page.  Finally, the only reference on the front of the flyer to the

disclosures is a short sentence that reads: "(See reverse side for pre-approval offer, terms and

conditions.)"  (Compl.¶ 3, Ex. A.)  Taken as a whole, this Court finds that one could reasonably

conclude that the disclosures made in the Easterns Flier are designed to ensure minimal attention

by the reader.   As a result, this Court cannot conclude as a matter of law that the Easterns Flyer

made the statutorily required disclosures in a "clear and conspicuous" manner.[5]

---

[5]      *See generally Cole v. U.S. Capital*, 389 F.3d at 728-32 (finding that flyer from car dealer might not have made required disclosures in a "conspicuous" manner); *see also Murray v. Flexpoint Funding Corp.*, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500, *2 (N.D. Ill. Jun. 17, 2005) (same with respect to flyer from mortgage broker); *Murray v. Sunrise Chevrolet, Inc.*, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245, *3-4 (N.D. Ill. Sept. 15, 2005) (same with respect to flyer from car dealer).

<u>CONCLUSION</u>

For the above reasons, Easterns' Motion to Enforce Arbitration, Dismiss, or in the

Alternative to Stay is DENIED.  A separate Order follows.


Dated: October 5, 2005                              /s/_____
                                                   Richard D. Bennett
                                                   United States District Judge